PEOPLE v MINOR

Docket No. 163690. Submitted May 16, 1995, at Lansing. Decided
October 6, 1995, at 9:05 A.M. Leave to appeal sought.

Lorenzo C. Minor was convicted following a jury trial in the
Genesee Circuit Court, Judith A. Fullerton, J., of first-degree
felony murder, larceny from a person, and possession of a
firearm during the commission of a felony. He was sentenced to
concurrent sentences of life imprisonment without parole for
the murder conviction and ten to fifteen years for the larceny
conviction. He was also sentenced to two years' imprisonment
for the felony-firearm conviction, to be served before the other
sentences. The defendant appealed.

In an opinion by MARKMAN, J., concurred in by M. F. SAPALA,
J., the Court of Appeals *held:*

1. Where an accomplice, or as in this case the defendant's
companion, has been granted immunity from prosecution in
order to secure his testimony, it is clear error for the trial court
to deny the defendant an opportunity to elicit this information
at trial. A witness' motivation for testifying is always of unde-
niable relevance and the defendant is entitled to have the jury
consider any fact that may have influenced the witness' testi-
mony. Although the trial court erred in limiting cross-examina-
tion of the defendant's companion, reversal is not required. The
effect of the defendant's diminished cross-examination of the
witness did not deprive the defendant of a more favorable
verdict. The error did not result in a miscarriage of justice.
Therefore, the error was harmless in fact. Not every limitation
on cross-examination is error requiring reversal. The error in
this case was not particularly persuasive or inflammatory, and
was harmless beyond a reasonable doubt.

2. Alleged improper remarks by the prosecutor did not have
the effect of denying the defendant a fair and impartial trial.

3. Conviction of and sentences for both felony murder and
the predicate felony constitute multiple punishments for the
predicate offense and violate double jeopardy principles. The
defendant's conviction of the predicate felony, in this case
larceny from a person, must be vacated.

The defendant's convictions of felony murder and felony-fire-
arm are affirmed, the conviction of larceny from a person is
reversed, and the sentence for that conviction is vacated.

M.F. SAPALA, J., concurring, wrote separately to emphasize
that the refusal of the trial court to permit cross-examination
of a res gestae witness with regard to the grant of immunity to
the witness was clear error. However, a conviction fairly
reached should not be set aside where, as in this case, proof of

the defendant's guilt is overwhelming, even when serious judicial error occurs.

FITZGERALD, P.J., dissenting, stated that the trial court abused its discretion in granting the prosecutor's motion to limit the defendant's cross-examination regarding the grant of immunity but disagreed that the error was harmless. The denial of the opportunity to exercise a right fundamental to our criminal process is so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless. The defendant's convictions should be reversed and the matter should be remanded for a new trial.

1. WITNESSES — LIMITED CROSS EXAMINATION — APPEAL.

A trial court's determination to limit the cross-examination of a witness is reviewed for an abuse of discretion.

2. WITNESSES — MOTIVATION FOR TESTIFYING — IMMUNITY FROM PROSECUTION.

A witness' motivation for testifying is always of undeniable relevance and a defendant is entitled to have the jury consider any fact that may have influenced the witness' testimony; therefore, where a defendant's accomplice or companion has been granted immunity from prosecution in order to secure that person's testimony, it is clear error for the court to deny the defendant the opportunity to elicit this information at trial.

3. APPEAL — HARMLESS ERROR.

Two inquiries are pertinent to the question whether an error of constitutional dimension is harmless: first, is the error harmless beyond a reasonable doubt, i.e., did it have no effect on the verdict; second, is the error so offensive to the maintenance of a sound judicial process that it can never be regarded as harmless, i.e., was it an error deliberately injected into the proceedings by the prosecution, an error that deprived the defendant of a fundamental element of the adversarial process, or an error that was particularly persuasive or inflammatory.

4. TRIAL — CROSS-EXAMINATION — LIMITATIONS ON CROSS-EXAMINATION.

Not every limitation upon the defendant's right to cross-examination is error requiring reversal, e.g., a claim that the denial of cross-examination has prevented the exploration of a witness' bias is subject to a harmless error analysis.

5. TRIAL — PROSECUTING ATTORNEYS — MISCONDUCT.

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial.

6. CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

The state may not place a defendant twice in jeopardy for a single offense; conviction of and sentences for both felony murder and the predicate felony constitute multiple punishments for the predicate offense and violate the double jeopardy principles of the Michigan Constitution (Const 1963, art 1, § 15).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Arthur A. Busch,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief of Appeals, Research, and Training, for the people.

*Joseph J. Farah,* for the defendant on appeal.

Before: FITZGERALD, P.J., and MARKMAN and M. F. SAPALA,* JJ.

MARKMAN, J. Defendant appeals as of right his convictions by a jury of first-degree felony murder, MCL 750.316; MSA 28.548, larceny from a person, MCL 750.357; MSA 28.589, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). On March 4, 1993, defendant was sentenced to life imprisonment without parole for the murder conviction and ten to fifteen years for the larceny conviction. These sentences were to be served concurrently but consecutively to the two-year sentence received for the felony-firearm conviction. We affirm with regard to the first-degree murder and felony-firearm convictions and reverse with regard to the larceny conviction.

Defendant first argues that the trial court erred in granting the prosecutor's motion to limit cross-examination of a witness, Dwayne Cordell, who was defendant's companion at the time of the shooting that led to defendant's convictions. The court ruled that defendant's counsel could not question Cordell with respect to a grant of immunity that Cordell had received from the prosecutor.

Whether a trial court has properly limited cross-examination is reviewed for an abuse of discretion. *People v Vanderhoof,* 234 Mich 419, 423; 208 NW 458 (1926); *People v Mumford,* 183 Mich App 149, 154; 455 NW2d 51 (1990). Where an accomplice— or in this case a "companion"—has been granted immunity in order to secure his testimony, it is

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

clear error for the court to deny the defendant the opportunity to elicit this information at trial. *Id.* at 152; *People v Atkins,* 397 Mich 163, 173; 243 NW2d 292 (1976). A witness' motivation for testifying is always of undeniable relevance and a defendant is entitled to have the jury consider any fact that may have influenced the witness' testimony. *Mumford, supra* at 152.

However plain this error, we are not persuaded that reversal is required. MCL 769.26; MSA 28.1096 provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

While the defendant normally bears the burden of establishing error requiring reversal, *People v Rowell,* 14 Mich App 190, 196; 165 NW2d 423 (1968), where the error is of constitutional dimension, the burden of demonstrating its harmlessness rests with the prosecutor. *Chapman v California,* 386 US 18, 24; 87 S Ct 824; 17 L Ed 2d 705 (1967).

Two inquiries are pertinent to whether an error of constitutional dimension is harmless. First, is the error harmless beyond a reasonable doubt? *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972); *People v Nixten,* 160 Mich App 203, 211; 408 NW2d 77 (1987). An error is harmless beyond a reasonable doubt when it has had no effect on the verdict. *People v Bigge,* 297 Mich 58, 72; 297 NW 70 (1941); *People v Thinel (On Remand),* 164 Mich App 717, 721; 417 NW2d 585 (1987). Second, is the error so offensive to the

maintenance of a sound judicial process that it can never be regarded as harmless? *Robinson, supra; Nixten, supra.* An error may run afoul of this standard if it was deliberately injected into the proceedings by the prosecution, if it deprived the defendant of a fundamental element of the adversarial process, or if it was particularly persuasive or inflammatory. *Id.*

In the instant case, Cordell's testimony was the testimony most favorable to defendant presented at trial, other than defendant's own testimony. Cordell was the only witness who, in addition to identifying defendant as the shooter, corroborated defendant's statement that the shooting victim—a customer at a gasoline station—was approaching the defendant when the shooting occurred, after defendant had robbed the station attendant. This testimony had the effect of bolstering defendant's claim that the shooting had occurred in the course of "self-defense."[1] Two other eyewitnesses—the service station attendant and another customer—both testified that defendant was the shooter and that the victim had made no moves in his direction. A third witness, an individual seated in the victim's car at the time of the shooting, also testified about circumstantial events that surrounded the shooting.

Thus, there was substantial evidence beyond the testimony of Cordell that defendant was the shooter. Contrary to defendant's claim that the prosecutor "highlighted" Cordell's testimony in his closing argument, the prosecutor referenced all the witnesses' statements in a roughly equivalent manner. Had the jury been aware of Cordell's grant of immunity, it would have been apprised of a possible motive for his testimony and may have found him to be less credible as a result. Had this

---

[1] A robber or other wrongdoer engaged in felonious conduct has no privilege of self-defense; rather, all citizens are entitled to arrest the felon, and to use deadly force if necessary to subdue him. *People v Couch,* 436 Mich 414; 461 NW2d 683 (1990).

occurred, we believe principally that the jury would have been less inclined to believe Cordell's testimony that supported defendant's theory of "self-defense." Further, Cordell's testimony was fully consistent with statements that he had provided to the police before any immunity agreement was reached with the prosecutors.[2] To the extent that Cordell was effectively impeached by cross-examination because of the immunity agreement, such identity of testimony would certainly have contributed to his rehabilitation.

In view of the presence of the other eyewitnesses, we do not believe that the effect of defendant's diminished cross-examination of Cordell deprived him of a more favorable verdict. Nor do we believe that the error resulted in a miscarriage of justice. *Robinson, supra* at 560-561. Accordingly, the court's error was harmless in fact.

Next, we look to determine whether the error was "so offensive to the maintenance of justice" that it could never be regarded as harmless. Such errors would include the right to trial by jury, the right to counsel, the right to an impartial judge, and the right not to be subject to forcibly coerced confessions. *Chapman, supra* at 23, n 8; *People v Swan,* 56 Mich App 22, 32, n 8; 223 NW2d 346 (1974). These are errors whose consequences are so pervasive that their effect "cannot be fully assessed." *Id.* at 32, n 6. Notwithstanding the importance of cross-examination in the search for the truth, not every limitation upon cross-examination is error requiring reversal. *People v Holliday,* 144 Mich App 560, 567; 376 NW2d 154 (1985); *People v Guy,* 121 Mich App 592, 611; 329 NW2d 435 (1982); *People v Johnston,* 76 Mich App 332, 336; 256

---

[2] The prosecutor contends that Cordell was not going to be charged with a crime although it is not in dispute that Cordell refused to testify at defendant's trial absent a grant of immunity. Defendant is correct that the actual existence of a charge or plea bargain is not determinative of defendant's cross-examination rights but rather of the nature of the inducement to the witness to testify. *People v Atkins,* 397 Mich 163, 174; 243 NW2d 292 (1976).

NW2d 782 (1977); *People v Crutchfield,* 62 Mich
App 149, 155-156; 233 NW2d 507 (1975); cf. *People
v Monasterski,* 105 Mich App 645; 307 NW2d 394
(1981). In particular, a claim that the denial of
cross-examination has prevented the exploration of
a witness' bias is subject to harmless error analy-
sis. *People v Bushard,* 444 Mich 384, 391, n 7; 508
NW2d 745 (1993), citing *Chapman, supra* at 24;
*Delaware v Van Arsdall,* 475 US 673, 684; 106 S
Ct 1431; 89 L Ed 2d 674 (1986). See also *Crane v
Kentucky,* 476 US 683, 692; 106 S Ct 2142; 90 L Ed
2d 636 (1986). Such an error is not necessarily of
constitutional dimension, *Bushard, supra;* cf. *Mum-
ford, supra* at 153, although even a violation of a
federal constitutional right is subject to harmless
error analysis. *Chapman, supra; Bushard, supra;
People v Johnson,* 427 Mich 98, 115, n 14; 398
NW2d 219 (1986); *People v Severance,* 43 Mich
App 394; 204 NW2d 357 (1972).

In finding that the error in this case does not
require automatic reversal, we are substantially
influenced by our conclusion that a reasonable
estimation can be made of the effect of this error
and that such effect was not prejudicial to defen-
dant. Even where an error is of constitutional
magnitude, its harmlessness in fact is a significant
consideration in determining whether the error
warrants reversal. Further, we do not believe that
error was "deliberately injected into the proceed-
ings by the prosecution." Although at the behest of
the prosecution, the error in this case—the im-
proper limitation of cross-examination—was error
by the court. Nor do we believe that the error was
"particularly persuasive or inflammatory." It was
not persuasive for the reasons we have already set
forth in support of the finding that the error was
harmless in fact; it was not inflammatory because
the error resulted in the subtraction of testimony
rather than its addition.

While clearly there are circumstances in which
an error, such as that which occurred here, would

require reversal, *People v Mobley,* 390 Mich 57, 65; 210 NW2d 327 (1973), we do not believe that such a remedy is warranted in this specific case. Rather, we believe that the error was harmless beyond a reasonable doubt.

Defendant next argues that the prosecutor denied defendant his "constitutional rights to counsel and a fair trial," Const 1963, art 1, § 20; US Const, Am VI, when he told the jury not to blame defendant's counsel for defendant's "ridiculous story." Defendant alleges that this had the effect of undermining defendant's attorney-client relationship and shifting the focus of the trial from the evidence onto the trial participants.

The propriety of a prosecutor's conduct depends upon all the circumstances of a case and must be evaluated in context. *People v Foster,* 175 Mich App 311, 317; 437 NW2d 395 (1989). The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Daniel,* 207 Mich App 47, 56; 523 NW2d 830 (1994). While the prosecutor's remarks concerning defendant and his counsel were gratuitous and would have been better left unsaid, they did not have the effect of denying defendant a fair and impartial trial. The comments were isolated remarks and could not have had an effect on the outcome of the trial. In addition, through his objection, defendant's counsel himself dispelled any potential prejudice by observing that the prosecutor was in no position to be able to characterize counsel's opinion of the case. Reversal on the basis of a single imprudent statement by the prosecutor is not warranted in this case.

Finally, defendant contends that his dual convictions for felony murder and larceny from a person violate his constitutional right not to be subject to double jeopardy, because the latter was the predicate felony for the former. Although defendant did not raise this argument before the trial court, we

review this claim on the basis that defendant alleges a violation of his constitutional rights and refusal to review would result in a potential miscarriage of justice. *People v Bettistea,* 173 Mich App 106, 129; 434 NW2d 138 (1988).

Under the Michigan Constitution, the state may not place a defendant twice in jeopardy for a single offense. Const 1963, art 1, § 15. Conviction of and sentences for both felony murder and the predicate felony constitute multiple punishments for the predicate offense and thereby violate double jeopardy principles under the Michigan Constitution. *People v Harding,* 443 Mich 693, 714; 506 NW2d 482 (1993); *People v Wilder,* 411 Mich 328, 347; 308 NW2d 112 (1981); cf. *People v Sturgis,* 427 Mich 392, 400; 397 NW2d 783 (1986); *People v Wakeford,* 418 Mich 95, 105; 341 NW2d 68 (1983). Therefore, the conviction for the predicate offense, in this case larceny from a person, should be vacated. *Harding, supra* at 714.

Defendant's convictions of felony murder and felony-firearm are affirmed and his larceny conviction is reversed and vacated.

M. F. Sapala, J. *(concurring).* I concur and join in Judge Markman's opinion. It is necessary to emphasize that the refusal of the trial court to permit cross-examination of a res gestae witness with regard to a grant of immunity was clear error. Indeed, it is the kind of error that is usually so offensive to the maintenance of a sound judicial system that it should never be considered harmless.

In this case, however, proof of guilt of first-degree felony murder was overwhelming. Furthermore, the defendant's testimony confirmed that he shot the deceased, and there was no evidence in the record that his testimony was other than voluntary. There is no reason to conclude that the defendant testified only because Cordell testified for the prosecution.

A conviction fairly reached should not be set aside where proof of guilt is overwhelming even when serious judicial error such as seen here occurs.

FITZGERALD, P.J. *(dissenting)*. I respectfully dissent. In this case, accomplice and eyewitness Dwayne Cordell initially invoked his Fifth Amendment right to remain silent. After being granted absolute immunity by the prosecutor, Cordell agreed to testify. The trial court, however, granted the prosecutor's motion in limine to prevent defendant from cross-examining Cordell with regard to the grant of immunity that influenced his decision to testify.

The credibility of a witness is an issue "of the utmost importance" in every case. *People v Love,* 43 Mich App 608, 613; 204 NW2d 714 (1972). Evidence of a witness' bias or interest in a case is highly relevant to his credibility. *Id.* Because of the undeniable relevance of evidence of a witness' motivation for testifying, the prosecutor has a duty, upon request of defense counsel, to disclose to the jury the fact that immunity or a plea to a reduced charge has been granted to the testifying accomplice. *People v Atkins,* 397 Mich 163, 173-174; 243 NW2d 292 (1976); *People v Cadle,* 204 Mich App 646, 654; 516 NW2d 520 (1994). The disclosure requirement may be considered satisfied where the jury is made well aware of such facts by means of thorough and probing cross-examination by defense counsel. *Atkins, supra* at 174.

In *People v Mumford,* 183 Mich App 149, 153; 455 NW2d 51 (1990), a panel of this Court summarized the importance of cross-examination:

> Cross-examination is arguably the most effective, and sometimes the only, tool a defendant has to defend against the charges brought against him. Cross-examination is so critical to a defendant's defense that it is considered the "primary interest

secured by the confrontation clause, [US Const, Am VI; Const 1963, art 1, § 20]." [*People v Holliday,* 144 Mich App 560, 567; 376 NW2d 154 (1985)]. In *People v Dellabonda,* 265 Mich 486, 499-500; 251 NW 594 (1933), the Michigan Supreme Court explained that "[o]ne of the elementary principles of cross-examination is that the party having the right to cross-examine has a right to draw out from the witness and lay before the jury *anything* tending . . . [to] affect the credibility of the witness." (Emphasis added.) Thus, "a limitation on cross-examination which prevents [defendant] from placing before the jury *facts* from which bias, prejudice or lack of credibility of a prosecution witness might be inferred constitutes denial of the [constitutional] right of confrontation." *United States v Garrett,* 542 F2d 23, 25 (CA 6, 1976), emphasis added; *Davis v Alaska,* 415 US 308, 317-318; 94 S Ct 1105; 39 L Ed 2d 347 (1974). [Citations omitted.]

Immunity received in return for testimony is undeniably a fact that is relevant to a witness' credibility. Restricting cross-examination regarding the grant of immunity to a witness deprives the defendant of his constitutional right to confrontation. I find this result unacceptable and agree with the majority that the trial court abused its discretion in granting the prosecutor's motion to limit defendant's cross-examination regarding the grant of immunity. *Mumford, supra* at 154.

I disagree, however, with the majority's conclusion that the error was harmless. In my opinion, denial of the opportunity to exercise a right fundamental to our criminal process is so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972). See *People v Mobley,* 390 Mich 57, 65-66; 210 NW2d 327 (1973) (a codefendant invoked the privilege against self-incrimination on cross-examination after freely testifying on direct; the Supreme Court

found that the defendant was denied his constitutional right to confront the witnesses against him and that the error was not harmless despite the sufficiency of the evidence to show the defendant guilty beyond any reasonable doubt). I find the Court's language in *Mobley* enlightening and equally applicable in situations where the defendant's ability to cross-examine a witness regarding immunity or a plea to a reduced charge is restricted by the trial court:

> [I]t is strange indeed to permit the witness to damn defendant on direct examination and then refuse to have such testimony and the credibility of the witness tested by a vigorous cross-examination. Such an error negates the theory of the adversary process. Such an error cannot be permitted to pass uncorrected.
> Not only a right fundamental to any accused person is involved, but jurisprudence important to the state. [*Id.* at 66.]

I would reverse and remand for a new trial.